IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DANIJELA MOJSILOVIC, and<br>ALEKSANDAR MOJSILOVIC,<br><br>    Plaintiffs,<br><br>vs.<br><br>STATE OF OKLAHOMA, ex rel. THE<br>BOARD OF REGENTS FOR THE<br>UNIVERSITY OF OKLAHOMA; PURE<br>PROTEIN, LLC., a domestic limited liability<br>company, and WILLIAM HILDEBRAND,<br>an individual.<br><br>    Defendants. | Case No. 14-CV-00886-R |

**DEFENDANT PURE PROTEIN, LLC'S
MOTION TO DISMISS AND BRIEF IN SUPPORT**

Defendant Pure Protein, LLC ("Pure Protein") moves the Court to dismiss Plaintiffs' Complaint ("Complaint") pursuant to Rules 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. In support of its Motion, Pure Protein respectfully submits the following brief in support.

**BRIEF IN SUPPORT**

**I.
INTRODUCTION**

Plaintiffs allege they were hired by the University of Oklahoma to work in the University's medical research center, using the University's lab equipment, under the University's immigration sponsorship. Complaint, ¶¶ 12-14, 16, 24-25. Plaintiffs further allege Dr. William Hildebrand ("Hildebrand"), the University director of the University Health Sciences Center where Plaintiffs worked, "used his role as the supervisor of

Plaintiffs' work for Defendant University" to force Plaintiffs to work for Pure Protein, supposedly without pay, or "face deportation upon threat of termination." Complaint, ¶ 24, 26-27.

Plaintiffs' allegations fail to state a claim against Pure Protein, a third-party that never employed Plaintiffs. Specifically, (i) Plaintiffs failed to allege well-pleaded facts plausibly showing they were employed by Pure Protein; (ii) Plaintiffs failed to allege well-pleaded facts regarding their method of compensation (*e.g.*, salary) or otherwise plausibly showing they were not paid for all hours worked; (iii) Plaintiffs failed to allege well-pleaded facts showing they were non-exempt and thus entitled to the protection of the overtime provisions of the FLSA; (iv) Plaintiffs' allegation that Hildebrand required them to work without pay or "face deportation upon threat of termination" cannot support a claim under the Trafficking Victims Protection Reauthorization Act ("TVPRA") as a matter of law; (v) Plaintiffs failed to allege well-pleaded facts plausibly showing Pure Protein had the knowledge required under the TVPRA; and (vi) Plaintiffs failed to state a claim under the Oklahoma Labor Protection Act because they failed to provide well-pleaded facts showing Pure Protein was their employer and that they were non-exempt.

## II.
## QUESTIONS PRESENTED

A.  Have Plaintiffs pleaded factual content to enable the court to draw the reasonable inference that Pure Protein is liable for any of the misconduct alleged in the Complaint as opposed to raising the mere possibility of liability? (*See* Section III.B., *infra*)

B.   Does Plaintiffs' Complaint present well-pleaded facts sufficient to plausibly show that Pure Protein was Plaintiffs' employer as opposed to raising the mere possibility that Pure Protein was their employer? (*See* Section III.C.(i), *infra*)

C.   Does Plaintiffs' Complaint present well-pleaded facts to plausibly show they worked over forty hours in any given week without any compensation as opposed to raising the mere possibility that they worked without any compensation? (*See* Sections III.C.(ii), E. *infra*)

D.   Does Plaintiffs' Complaint present well-pleaded facts to plausibly show they were entitled to the overtime protections of the FLSA as opposed to raising the mere possibility they were entitled to overtime protection? (*See* Section III.C.(ii), *infra*)

E.   Does Plaintiffs' Complaint present well-pleaded facts that plausibly show liability and the requisite knowledge under the TVPRA as opposed to raising the mere possibility of such liability and the requisite knowledge? (*See* Section III.D.(i), (ii), *infra*)

F.   Does Plaintiffs' Complaint present well-pleaded facts that plausibly show Pure Protein was their employer and that they were non-exempt and thus entitled to be paid twice per month under the Oklahoma Labor Protection Act? (*See* Section III.E., *infra*)

## III.
## ARGUMENT AND AUTHORITY

### A.   The Pleading Standard.

Federal Rule of Civil Procedure 8(a)(2) requires that any claim for relief contain "a short plain statement of the claim showing that the pleader is entitled to relief. …" Fed R. Civ. Proc. 8(a)(2). Notably, Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n. 3 (2007). As the United States Supreme Court has explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does need detailed factual allegations, a plaintiff's obligation to provide the grounds of his 'entitle[ment]' to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.

*Twombly*, 550 U.S. at 555 (quotations and citations omitted).

Indeed, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The Court has explained that a claim is "plausible on its face" only if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Moreover, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. A court must separate a complaint's *legal conclusions* from the complaint's well-pleaded *factual*

*allegations* and "determine whether the well-pleaded factual allegations plausibly give rise to an entitlement to relief." *Id*. If those well-pleaded facts "do not permit the court to infer more than the *mere possibility* of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. (emphasis added) (quoting Fed. R. Civ. Pro. 8(a)(2)); *see Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (instructing district courts to "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable.").

### B.  Plaintiffs Have Failed To Allege Wrongful Conduct By Pure Protein.

According to Plaintiffs, they were "recruited and hired by Defendant State of Oklahoma ex rel. The Board of Regents for the University of Oklahoma to serve as research assistants in the Health Sciences Center medical research laboratory performing tissue culture and DNA sequencing." Complaint, ¶ 1; *see also* Complaint, ¶¶ 12-13, 16. Plaintiffs continue by explaining, "Defendant Hildebrand, at all relevant times, was the director of the medical research laboratory at the Defendant University's Health Services Center where Plaintiffs were employed. Defendant Hildebrand supervised and controlled all aspects of Plaintiffs' work in the laboratory for Defendant University." Complaint, ¶ 14.

Plaintiffs then allege that Pure Protein "contracts with Defendant University to use its facilities to create Class I and Class II transfectants, and for typing and tissue matching for transplant donors and patients through grants provided by third parties" and make the conclusory assertion that Hildebrand is "the owner and operator" of Pure Protein, without

alleging any *facts* to plausibly show Hildebrand is "the owner and operator" of Pure Protein.[1] Complaint, ¶ 15.

After making this perfunctory and conclusory attempt to implicate Pure Protein in this dispute (presumably because Plaintiffs know the other defendants enjoy sovereign immunity),[2] Plaintiffs then fail to allege any facts plausibly showing any supposed act *by Pure Protein*. Rather, Plaintiffs repeatedly allege that Hildebrand acted in his official capacity as their University supervisor in supposedly requiring them to work without pay or "face deportation upon threat of termination." Complaint, ¶ 14 ("Defendant Hildebrand, at all times relevant, was the director of the medical research laboratory at the Defendant University's Health Sciences Center where Plaintiffs were employed. Defendant Hildebrand supervised and controlled all aspects of Plaintiffs' work in the laboratory for Defendant University."), ¶ 16 ("Both Plaintiffs were hired to work in Defendant University's Health Sciences medical research laboratory under the direction of Defendant Hildebrand."), ¶ 24 ("Defendant Hildebrand used his role as laboratory director to condition Plaintiffs' continued employment for Defendant University, on their completion of work, without pay, for Defendant Pure Protein"), ¶ 27 ("Defendant

---

[1] Hildebrand has a small ownership interest in, and is a member of, Pure Protein but is not "the owner and operator" of Pure Protein.

[2] If the University defendants are dismissed, Pure Protein reserves the right to challenge Plaintiffs' Article III standing. *See City of Colorado Springs v. Climax Molybdenum Co.*, 587 F.3d 1071, 1080 (10th Cir. 2009) (cited in *Hart v. Sandridge Energy, Inc., et al.*, No. Civ-14-178-R, (W.D. Okla. April 2, 2014) (docket entry 62)) (original citations omitted) (emphasis by 10th Circuit) ("A plaintiff's injury is fairly traceable to the challenged action of a defendant where there is a 'causal connection between the injury and the conduct complained of'—that is, where the injury is the result of 'the challenged action of the defendant and *not the result of the independent action of some third party not before the court*.'").

Hildebrand used his role as supervisor of Plaintiffs' work for Defendant University, to force Plaintiffs to work for Defendant Hildebrand and Pure Protein or to face deportation upon threat of termination."). Plaintiffs even allege specifically that the work Defendant Hildebrand allegedly required them to perform without pay "took place on the premises of Defendant University and utilized equipment belonging to Defendant University." Complaint, ¶ 25.

Similarly, with respect to their claimed violation of the TVPRA, Plaintiffs again allege that Hildebrand acted in his official capacity as an employee of the University:

> Because Defendant Hildebrand, as the director of Defendant University's medical research laboratory, was responsible for assisting Plaintiffs with their required immigration paperwork to remain in the United States under the H1B program, Plaintiffs reasonably feared that Defendant Hildebrand would take action against their immigration status if they did not complete the work Defendant Hildebrand required without pay and without protest. In addition, Defendant Hildebrand used his position as a potential Green Card sponsor to force Plaintiffs to continue to work without pay.

Complaint, ¶ 31.

In short, while Plaintiffs mention Pure Protein in passing and make the conclusory assertion that Hildebrand is "the owner and operator" of Pure Protein, they do not actually accuse Pure Protein of any of the alleged wrongful conduct, much less provide well-pleaded facts plausibly showing Pure Protein is liable for any of their grievances.

**C.     Plaintiffs Failed To State A Claim Against Pure Protein Under the FLSA.**

Even if Plaintiffs had pleaded facts plausibly showing conduct by Pure Protein, Plaintiffs' FLSA claim against Pure Protein would still fail for two independent and additional reasons: (i) Plaintiffs failed to plead facts plausibly showing that Pure Protein

was their employer; and (ii) Plaintiffs failed to plead facts plausibly showing they actually worked over forty hours in any given week without being paid for it (*e.g.*, without being paid their salary).

### (ii) There Are No Well-Pleaded Facts Plausibly Establishing Pure Protein As Plaintiffs' Employer.

Plaintiffs bear the burden of showing they are entitled to the protection of the FLSA. *Reagor v. Okmulgee Cnty. Family Res. Ctr.*, 2012 WL 5507181, at *2 (10th Cir. 2012) (citing *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011)). "Critically, in pleading a cause of action under the FLSA, plaintiffs must establish an employer-employee relationship with the named defendants." *Thompson v. Real Estate Mortg. Network, Inc.*, No. 11-CV-01494 (DMC-JAD), 2011 WL 6935312, at *3 (D.N.J. 2011) (citing *Davis v. Abington Mem'l Hosp.*, 817 F. Supp.2d 556, 563 (E.D. Pa. 2011), *aff'd* 765 F.3d 236 (3rd Cir. 2014)).

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Whether an employment relationship exists for the purposes of the FLSA turns on the "economic reality" of the working relationship. *Saavedra v. Lowe's Home Cntrs., Inc.*, 748 F. Supp.2d 1273, 1285 (D.N.M. 2010) (quoting *Goldberg v. Whitaker House Co-op, Inc.*, 366 U.S. 28, 33 (1961); *see also Fernandez v. Mora-San Miguel Electric Cooperative*, 462 F.3d 1244, 1248 (10th Cir. 2006) (applying economic realities test to consideration of employer status under the EPAA, which defines "employer" in the same fashion as the FLSA).

As this Court has recently explained,

> [A]lthough it is clear that an employee may have more than one employer under the FLSA, the question posed herein is whether a plaintiff may simply allege that each of the named Defendants is his employer, without more. The Court concludes that it is not sufficient.

*Hart*, No. Civ-14-178-R, (W.D. Okla. April 2, 2014) (docket entry #62).

Yet this is precisely what Plaintiffs' Complaint attempts to do. Plaintiffs simply make the conclusory allegation that Pure Protein was their employer without alleging any well-pleaded facts plausibly showing that Pure Protein was their employer.

Rather, Plaintiffs affirmatively allege: (i) they were hired to work for the University of Oklahoma's Health Sciences Center; (ii) they worked physically on-site at the University of Oklahoma, in the University of Oklahoma's medical research center, using equipment owned by the University of Oklahoma; (iii) they were managed by Hildebrand in his capacity as a University director of the University's Health Sciences Center; and (iv) their H-1B professional worker status in the United States was sponsored by the University of Oklahoma. Complaint, ¶¶ 12-15, 16.

Notably, Plaintiffs conspicuously fail to allege several facts within their personal knowledge regarding the identity of their actual employer, including:

    (i)    The entity through whom their health benefits were offered;

    (ii)    The entity identified on their offer letters, employee handbooks, *etc.*;

    (iii)    The entity identified on their Forms W-2;

    (iv)    The entity identified on their Form I-20 OPT endorsements;

      (v)      The current and prior employers they each identified under penalty of perjury on Form G-325A in support of their Form I-485 Applications to Register Permanent Residence or Adjust Status.[3]

Plaintiffs similarly fail to allege any well-pleaded facts plausibly showing they were employed by Pure Protein as a matter of "economic reality," instead making it plain that the University of Oklahoma was their employer as a matter of "economic reality." Indeed, as noted below, Plaintiffs conspicuously fail to include any specific allegation regarding the source of their income (*e.g.*, the University) or how it was paid (*e.g.*, as a salary) and concede their immigration and work authorization status was dependent on the University, not Pure Protein. Complaint, ¶¶ 12-13, 31.

      **(ii)**      **There Are No Well-Pleaded Facts Plausibly Establishing Plaintiffs Were Not Paid For All Hours Worked Or Were Even Entitled To Overtime.**

Although Plaintiffs claim they were not paid for all hours worked, they conspicuously fail to allege how they were paid (*i.e.*, a salary or by the hour) and whether

---

[3] Indeed, if Plaintiffs had actually been employed by Pure Protein without authorization for more than 180 days, they would not have even been able to *file* Form I-485, much less have it approved. 8 U.S.C. § 1255(c)(8); 8 C.F.R. § 245.1(b)(4). Moreover, Plaintiffs would not have knowingly misrepresented the identities of their former employers, given that willful misrepresentation of a material fact renders an alien inadmissible. 8 U.S.C. § 1182 ("Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible."), § 1256 ("If, at any time within five years after the status of a person has been otherwise adjusted … to that of an alien lawfully admitted for permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, the Attorney General shall rescind the action taken granting an adjustment of status to such person."); Form G-325A (Rev. 02/07/13) (emphasis in original) ("**Penalties: Severe Penalties are provided by law for knowingly and willfully falsifying or concealing a material fact.**").

they continued to receive a regular salary from the University of Oklahoma during the period in question. *See, e.g.,* Complaint, ¶ 36. This is presumably because Plaintiffs know they were paid a regular salary during the time in question and know that acknowledging that fact would be fatal to their claims under the FLSA.

As a threshold matter, if Plaintiffs were paid a salary, then they did not work without pay: they received their salary.

Moreover, if Plaintiffs were paid a salary, they were exempt from the overtime provisions of the FLSA as a matter of law, given they have already judicially admitted they were employed as H-1B professionals. 29 C.F.R. § 541.300 (salaried employees are exempt if their primary duty requires "knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction" or requires "invention, imagination, originality or talent in a recognized field of artistic or creative endeavor"); 8 C.F.R. § 214.2(h)(4)(C)(ii) (defining an H-1B "specialty occupation" as "an occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor … and which requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation …").

Plaintiffs' conspicuous failure to allege well-pleaded facts plausibly showing they actually worked more than 40 hours in any given week without compensation (*i.e.*, without receiving their University salaries) requires dismissal of their FLSA claims as a matter of law. *Pruell v. Caritas Christi*, 678 F.3d 10, 13 (1st Cir. 2012) (granting 12(b)(6) motion to dismiss FLSA claim) (citations omitted) (allegation that plaintiffs "regularly

worked hours over 40 in a week and were not compensated for such time" was "so threadbare" that it failed to cross the line between conclusory and factual); *see also Davis v. Abington Memorial Hosp.*, 765 F.3d 236, 243 (3rd Cir. 2014) (granting 12(b)(6) motion to dismiss FLSA claim) ("None of the named plaintiffs has alleged a single workweek in which he or she worked at least forty hours and also worked uncompensated time in excess of forty hours."); *Landers v. Quality Communications, Inc.*, 771 F.3d 638, 645 (9th Cir. 2014) (granting 12(b)(6) motion to dismiss FLSA claim) ("A plaintiff may establish a plausible claim by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or any other facts that will permit the court to find plausibility.").

**D.   There Is No Well-Pleaded Claim Under the TVPRA.**

**(i)   Any Claim Based On An Alleged Threat to Require Work Without Pay Is Pre-Empted By The FLSA And Cannot Give Rise to TVPRA Liability.**

As noted above, Plaintiffs have failed to provide well-pleaded facts showing they actually worked without being paid. *See* Section III.C.(ii), *supra*. Moreover, and in any event, any claim that any defendant violated the TVPRA by requiring Plaintiffs to work without pay is pre-empted by the FLSA and, even if it were not pre-empted, would fail as a matter of law:

> First, to the extent that plaintiffs' forced labor claims are premised upon defendants forcing plaintiffs to work overtime without pay, these claims are clearly subsumed within plaintiffs' FLSA claim and, therefore, are preempted for the reasons discussed at length in *DeSilva I* [770 F.Supp.2d 497, 512-19 (E.D.N.Y. 2011)]. Moreover, plaintiffs' conclusory allegations

> that they provided labor and services to defendants because defendants either threatened to fire plaintiffs or berated plaintiffs in public for not finishing their work, the Court finds that such allegations do not state a claim under the forced labor statute. Specifically, even accepting these allegations as true, these threats would merely be threats of adverse but legitimate consequences, and such threats do not constitute forced labor.

*DeSilva v. North Shore-Long Island Jewish Health System, Inc.*, 2012 WL 748760, at *7 (E.D.N.Y. Mar. 7, 2012) (citations omitted).

### (ii) Any Alleged Threat to Terminate And Return An H-1B Worker Home Cannot Give Rise to TVPRA Liability.

Plaintiffs were employed as H-1B professionals. Complaint, ¶¶ 12-13. An H-1B professional is admitted for the purpose of working for his or her H-1B sponsor. 8 CFR §§ 214.2(h)(4)(iii)(E) ("Under section 101(a)(15)(H) of the [Immigration and Nationality] Act, an alien may be authorized to come to the United States temporarily to perform services or labor for … an employer, if petitioned for by that employer.").

If the H-1B sponsor terminates the H-1B professional, the sponsor *must* notify U.S. Citizenship and Immigration Services 8 C.F.R. § 214.2(h)(11)(i)(A) ("If the petitioner no longer employs the beneficiary, the petitioner shall send a letter explaining the change(s) to the director who approved the petition."). Moreover, the H-1B sponsor shall be "liable for the reasonable costs of return transportation of the alien abroad." 8 CFR §§ 214.2(h)(4)(iii)(E).

In short, federal law specifically contemplates that an H-1B sponsor may terminate the employment of an H-1B professional and specifically provides that in such a case the sponsor *must* (i) notify USCIS that employment has been terminated, and (ii) pay for the cost of returning the H-1B professional to his or her last place of foreign residence.

Plaintiffs' allegation that Hildebrand told them that refusing to work would result in them being terminated (like any other employee) and returned to Serbia amounts at best to a "threat[] of adverse but legitimate consequences, and such threats do not constitute forced labor." *DeSilva*, 2012 WL 748760, at *7 (E.D.N.Y. Mar. 7, 2012) ("Notably, plaintiffs have not cited a single case to support their novel theory that threatening to fire an at-will employee … constitutes forced labor.").

Indeed, TVPRA claims virtually identical to those of Plaintiffs have been rejected as a matter of law:

> Alvarado also alleges that the University violated § 1589(a)(4) by refusing to raise his salary of $95,000 per year when he took on additional responsibilities of the Director of Recruitment and Admissions position. … Alvarado contends that he suffered serious financial harm within the meaning of § 1589(a)(4) because the University threatened to terminate his employment or not renew his contract if he persisted in asking for a pay raise. … As discussed above, the stated purpose of the Trafficking Victims Protection Act of 2000 is to prevent the modern slave trade in persons, particularly women and children. Typical § 1589 cases involve use of force, threats of violence, fraud, and coercion that prevent the employee/traffickee from having viable exit options. … Alvarado was not trafficked to the United States, he earned a healthy salary, and enjoyed the same freedoms and rights of employment as any other alien resident. … If the University had terminated his employment, as Alvarado claims it threatened, he was free to seek employment with another employer or to leave the United States.

*Alvarado v. Universidad Carlos Albizu*, 2010 WL 3385345, at * 3-4 (S.D. Fla. 2010 Aug. 25, 2010*)* (citations omitted).

### (iii) Plaintiffs Failed To Plead Facts Plausibly Showing Pure Protein Had The Requisite Knowledge For Liability Under The TVPRA.

The TVPRA premises liability on a showing that the defendant "knowingly" obtained labor through one of the prohibited means identified by the statue. 18 U.S.C.

§§ 1589(a); *see also* 18 U.S.C. § 1590 (prohibiting "knowingly" recruiting, harboring, *etc.*). Plaintiffs fail to offer well-pleaded facts plausibly showing that *Pure Protein* "knowingly" used any actionable threat to obtain their labor. Accordingly, Plaintiffs have failed to state a "plausible claim" that Pure Protein knowingly violated the TVPRA.

### E.     There Is No Well-Pleaded Claim Under The Oklahoma Labor Protection Act.

Plaintiffs' claim under the Oklahoma Labor Protection Act fails for the same reasons their FLSA claims fail. Plaintiffs failed to provide well-pleaded facts showing Pure Protein was their employer and conspicuously failed to allege facts plausibly showing they were not paid for the work they performed.

In addition, Plaintiffs conspicuously failed to allege (even in conclusory fashion) that they were non-exempt, and only non-exempt employees are entitled to be paid "twice per month" as alleged in Plaintiffs' Complaint. *Compare* Okla. Stat. tit. 40 § 165.2 *with* Complaint ¶ 57 (failing to make any allegation that Plaintiffs were non-exempt but asserting entitlement to payment twice per month).

## IV.
## CONCLUSION

WHEREFORE, Pure Protein respectfully requests the Court dismiss Plaintiffs' Complaint with prejudice, award Pure Protein its costs, including attorneys' fees, and provide such other relief as the Court deems just and appropriate.

Respectfully Submitted,

**McAFEE & TAFT A PROFESSIONAL CORPORATION**

*/s/Spencer F. Smith*
Spencer F. Smith, OBA #20430
Joshua W. Solberg, OBA #22308
Tenth Floor, Two Leadership Square
211 North Robinson Avenue
Oklahoma City, OK 73102
Telephone: (405) 235-9621
Facsimile: (405) 235-0439
spencer.smith@mcafeetaft.com
joshua.solberg@mcafeetaft.com


**BOULETTE & GOLDEN L.L.P.**

Jason S. Boulette (TX Bar No. 90001846)
(*Admitted Pro Hac Vice*)
Steven H. Garrett (TX Bar No. 24073473)
(*Admitted Pro Hac Vice*)
2801 Via Fortuna, Suite 530
Austin, Texas 78746
Phone: (512) 732-8901
Fax: (512) 732-8905
jason@boulettegolden.com
steven@boulettegolden.com

**ATTORNEYS FOR PURE PROTEIN**

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of December, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

>George S. Freedman
>Sarah Rowe Clutts
>LESTER, LOVING & DAVIES, P.C.
>1701 South Kelly Avenue
>Edmond, Oklahoma 73013-3623
>(405) 844-9900 – Telephone
>(405) 844-9958 – Facsimile
>gfreedman@lldlaw.com
>sclutts@lldlaw.com

>**McAFEE & TAFT A PROFESSIONAL CORPORATION**
>
>*s/Spencer F. Smith*
>Counsel for Defendant Pure Protein