**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| [1]  DANIJELA MOJSILOVIC, and <br> [2]  ALEKSANDAR MOJSILOVIC, <br>   Plaintiffs, <br> v. <br> [1]  STATE OF OKLAHOMA ex rel. THE BOARD OF REGENTS FOR THE UNIVERSITY OF OKLAHOMA; <br> [2]  PURE PROTEIN, LLC., a domestic limited liability company, and; <br> [3]  WILLIAM HILDEBRAND, an individual, <br>   Defendants. | Case No. CIV-14-886-R |

## UNIVERSITY'S MOTION TO DISMISS

Defendant, the State of Oklahoma *ex rel*. Board of Regents of the University of Oklahoma (the "University"), respectfully requests the Court dismiss Plaintiffs' Complaint [Doc. No. 1] pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(3), and 12(b)(6).

The Complaint alleges the University was a joint employer, along with the other named defendants, of the Plaintiffs from 2007 until June 2014. (Compl. ¶¶ 11, 12, 13, 21.) Plaintiffs seeks to recover alleged unpaid wages through three causes of action, alleged collectively against all defendants: (1) failure to pay overtime as required by the Fair Labor Standards Act, 29 U.S.C. § 216 ("FLSA") (Compl. ¶¶ 32-39); (2) forced labor prohibited by the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1589 ("TVPRA") (Compl. ¶¶ 40-46); (3) trafficking into servitude prohibited by the TVPRA, 18 U.S.C. § 1590 (Compl. ¶¶ 47-54); and (4) failure to pay wages timely as required by the Oklahoma Protection of Labor Act, 40 Okla. Stat. § 165.1, *et seq*. ("OPLA") (Compl. ¶¶ 55-59).

Plaintiffs plead that they were immigrant workers employed by the University of Oklahoma through the H1B Visa program as research scientists. Plaintiffs argue their professional services were used in excess of forty (40) hours per week and placed under such scrutiny that their work-Visa status was allegedly implicated. (Compl. ¶¶ 20, 21, 30.) Even if Plaintiffs' allegations as to the University and any of its employees acting within the scope of University employment, such as Dr. Hildebrand, were true or based in any level of factual detail (which they are not), each cause of action is legally and irreparably defective.

Plaintiffs' claims present issues of immunity under the Eleventh Amendment; timeliness; and failure to state a claim, all of which necessitate immediate dismissal.

## ARGUMENTS AND AUTHORITIES

**I.   NO COURT HAS SUBJECT MATTER JURISDICTION.**

"The Eleventh Amendment is an explicit limitation of judicial power of the United States." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119 (1984); U.S. Const. Amend. XI; *see also Chaffin v. Kan. State Fair Bd.*, 348 F.3d 850, 865-66 (10th Cir. 2003). Without waiver or valid abrogation of sovereign immunity, states are immune from suit in federal court for monetary damages. *See Chaffin*, *supra*.

Plaintiffs bear the burden of showing valid subject matter jurisdiction. *See Montoyo v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). "A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense." *Coleman v. Court of Appeals of Md.*, -- U.S. --, 132 S.Ct. 1327, 1333 (2012), *citing Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-73 (2000). The Supreme Court has interpreted the Eleventh Amendment to mean that States may not be sued in federal court unless they unequivocally consent to it or Congress unequivocally abrogates the immunity. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55-56 (1996); *Green v. Mansour*, 474 U.S.

64, 68 (1985). The University, a constitutionally created State entity, is entitled to Eleventh Amendment immunity. *See Seibert v. Okla.*, 867 F. 2d 591, 594-95 (10th Cir. 1989); 51 Okla. Stat. § 152.1 ("[I]t is not the intent of the state to waive any rights under the Eleventh Amendment to the United States."); *Hensel v. Office of Chief Admin. Hearing Officer*, 38 F.3d 505, 508 (10th Cir. 1994) (Board of Regents of University of Oklahoma is arm of State); *see also Freeman v. State ex rel. Dept. of Human Servs.*, 145 P.3d 1078 (Okla. 2006).

Without the presence of an express waiver, the issue is whether Congress has abrogated the States' immunity from suit pursuant to a valid exercise of constitutional powers. *Seminole Tribe*, 517 U.S. at 55-56, *citing Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (valid abrogation held to have been exercised by Congress only under §5 of the Fourteenth Amendment). Premised only on claims where no valid abrogation can be established, the Complaint must be dismissed.

    A.    **THE FLSA CLAIM IS BARRED.**

A state employee is prohibited from bringing an individual action against the State of Oklahoma through the FLSA to recover unpaid overtime. *Alden v. Maine*, 537 U.S.706, 758 (1999); *Freeman v. State ex rel. Dept. of Human Servs.*, 145 P.3d 1078, 1079-8-1 (Okla. 2006); *Williams v. Okla. Dept. of Human Servs.*, 122 Fed.Appx. 958, 959, 2004 WL 2988574 at *1 (10th Cir. 2004) (unpublished disposition) (plaintiff - <u>represented by lead counsel in the present action</u> - had FLSA overtime claim against State of Oklahoma dismissed <u>by this Honorable Court</u> (Civ-03-1478-R) due to sovereign immunity; Tenth Circuit affirmed).

Further, Plaintiff's claims are barred by the statute of limitations. 29 U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988); *compare* Compl. ¶¶ 12, 17.

### B.     THE TVPRA CLAIMS ARE BARRED.

Plaintiffs seek recovery for forced labor and trafficking claims brought under Section 1595 of the TVPRA, which allows civil recovery for violations of the forced labor and trafficking criminal statutes. Plaintiffs claims derive from alleged violations of two criminal statutes, 18 U.S.C. § 1589 (forced labor) and 18 U.S.C. § 1590 (trafficking with respect to peonage, slavery, involuntary servitude, or forced labor). Plaintiffs must show that "the defendant has engaged in human trafficking, which Congress described as 'a contemporary manifestation of slavery.'" *Ditullio v. Boehm*, 662 F.3d 1091, 1098 (9th Cir. 2011).

Plaintiffs' claims are barred by the University's sovereignty and exemptions from suit as provided by the OGTCA and the Eleventh Amendment. Further, Plaintiff's claims may be barred by the statute of limitations. *See* 18 U.S.C. § 1595(c) (ten-year statue of limitations did not go into effect until December 23, 2008); *compare* Compl. ¶¶ 12, 17.

####      i.     *The OGTCA bars Plaintiffs' claims.*

The civil remedy provided under the TVPRA sounds in tort. *Francisco v. Susano*, 525 Fed.Appx. 828, 833-34, 2013 WL 2302691 at **4-6 (10th Cir. 2013). As such, any claims against the University or its employees are governed by the Oklahoma Governmental Tort Claims Act, 51 Okla. Stat. §§ 151 *et seq*., ("OGTCA"). 51 Okla. Stat. § 153(B) ("[t]he liability of the state or political subdivision under this act shall be exclusive and in place of all other liability of the state . . . or employee at common law or otherwise."); *see also Tuffy's Inc. v. City of Okla. City,* 212 P.3d 1158, 1163 (Okla. 2009); *Fuller v. Odom*, 741 P.2d 449, 452 (Okla. 187); *Curtis v. Bd. of Educ.*, 914 P.2d 656, 658 (Okla. 1995); *Duncan v. City of Nichols Hills*, 13 P.2d 1303, 1307 (Okla. 1996). The University is immune from claims that were not exhausted through the administrative remedies process of the OGTCA, from claims for intentional wrongdoing, and from joint liability and punitive and exemplary damages.

### a. Plaintiffs cannot plead compliance with the OGTCA.

Contrary to the legal requirement to do so, Plaintiffs do not allege that they properly filed a tort claim notice and exhausted the administrative remedies under the OGTCA before filing this lawsuit. *See Willbourne v. City of Tulsa*, 1986 OK 44, ¶ 5, 721 P.2d 803, 805 ("If recovery is sought under the [OGTCA], the petition <u>must factually allege either actual or substantial compliance</u> with § 156 of the Act to withstand a demurrer") (emphasis added).

### b. Plaintiffs failed to exhaust administrative remedies.

Compliance with the notice provisions of the OGTCA is a condition precedent to suit against the State. 51 Okla. Stat. § 157(B) ("No action for any cause arising under this act . . . shall be maintained <u>unless valid notice has been given</u> . . . ."); *Duncan, supra*, 913 P.2d at 1307 (citations omitted); and *Shanbour v. Hollingsworth*, 918 P.2d 73, 75 (Okla. 1996) (Compliance with written notice of claim provision is prerequisite to state's consent to be sued in tort and to exercise of judicial power over alleged tortious wrong by government). To invoke the power of a court to consider a tort claim, a plaintiff must satisfy (1) timely presentation of notice of a claim within one year after the loss (51 Okla. Stat. § 156(A) and (B)), and (2) timely commencement of an action within 180 days of the denial of a claim (51 Okla. Stat. § 157(B)); *Hall v. GEO Group, Inc.*, 324 P.3d 399, 400 (Okla. 2014).

Plaintiffs had one-year to present timely notice (of their aggregated claim) to the State, but neither did. Failure to timely file a tort claim results in the loss of such claim. *See Clem v. Leedey Pub. Works Auth.*, 78 P.3d 969 (Okla. Civ. App. 2003); *Beck v. City of Muskogee Police Dept.*, 195 F.3d 553, 560-61 (10th Cir. 1999). Plaintiffs' failure of valid notice of a claim or timely filing of the action demands dismissal on jurisdictional grounds.

### c. University employees are immune from suit.

The sovereign immunity of State employees by the OGTCA is absolute (*State v. Burris*, 894 P.2d 1122 (Okla. 1995)), and there is a presumption of immunity for State employees (*Rooks v. State*, 842 P.2d 773, 777 (Okla. 1992)). "The state . . . and all of [its] employees acting within the scope of their employment, whether performing governmental or proprietary functions, <u>shall be immune</u> from liability for tort." 51 Okla. Stat. § 152.1(A). "**<u>In no instance shall an employee of the state . . . acting with the scope of h[er] employment be named as defendant</u>** . . . ." 51 Okla. Stat. § 163(C) (emphasis added).

The very purpose of sovereign immunity is to spare State employees like the Dr. Hildebrand from unwarranted liability and the unwarranted burdens customarily imposed upon those defending a lawsuit. An employee of the State is, therefore, relieved from private liability for alleged tortious conduct committed within the scope of employment. *Pellegrino v. State*, 63 P.3d 535 (Okla. 2003); *Martin v. Johnson*, 975 P.2d 889 (Okla. 1998)).

### d. The University is immune from intentional wrongdoing claims.

The University and employees acting on behalf of the University cannot be liable when "the tort cause of action sued upon requires proof of an element that necessarily excludes good faith conduct on the part of governmental employees." *Fehring v. State Ins. Fund*, 19 P.3d 276, 283 (Okla. 2001); *see also Parker v. City of Midwest City*, 850 P.2d 1065 (Okla. 1993) (immune under OGTCA for tort of malicious prosecution); *Garst v. Univ. of Okla.*, 38 P.3d 927 (Okla. Civ. App. 2001) (University immune from tort of intentional misrepresentation by state employee); *McMullen v. City of Del City*, 920 P.2d 528 (Okla. Civ. App. 1996) (immune from intentional infliction of emotional distress). Claims under the TVPRA necessarily preclude good faith; therefore, the University is exempt.

e. **The University is exempt from the requested relief.**

Pursuant to 51 Okla. Stat. §154(C), the University is immune from suit for punitive and exemplary damages. Further, the University cannot be held liable under a joint liability theory or request for relief. "The liability of the state . . . shall be several from that of any other person or entity, and the state or political subdivision shall only be liable for that percentage of total damages that corresponds to its percentage of total negligence." 51 Okla. Stat. § 154(G). *See also Fuller v. Odom,* 741 P.2d 449 (Okla. 1987).

ii. *Eleventh Amendment Immunity Bars Plaintiffs' Claims.*

In order to determine whether Congress has abrogated states' sovereign immunity, the threshold question is whether Congress has "unequivocally expresse[d] its intent to abrogate the immunity." *Seminole Tribe*, 517 U.S. at 55-57, *citing Green v. Mansour*, 474 U.S. 64, 68 (1985). "Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement." *Id*. (internal quotations omitted). "To temper Congress' acknowledged powers of abrogation with due concern for the Eleventh Amendment's role as an essential component of our constitutional structure, we have applied a simple but stringent test: 'Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute.'" *Dellmuth v. Muth*, 491 U.S. 223, 227-28 (1989).

There is no language to indicate Congress intended the TVPRA civil remedy provision to extend to the states. The civil remedy provision of the TVPRA provides:

> An individual who is a victim of a violation may bring a civil action against the perpetrator (***or whoever knowingly*** benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a) (emphasis added).  "A general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 246 (1985) (overruled on different grounds).[1]  There has been no abrogation of immunity.

### C.     THE STATE LAW CLAIM IS BARRED.

Plaintiffs argue for monetary recovery against the University under the OPLA.  (Compl. ¶¶ 55-59.)  "Defendant, as an agency of the State of Oklahoma, cannot be sued in federal court for state law torts of wrongful discharge." *Osborne v. Oklahoma Employment Sec. Com'n*, 2006 WL 2090089 at *4 (W.D. Okla.) (citing *Pennhurst*, 465 U.S. at 121-122); *see also, e.g., Elwell v. State of Okla.*, No. CIV-10-1169-C, 2011 WL 560455 (W.D. Okla. Feb 8, 2011), *aff'd Elwell v. Okla. ex rel. Bd. of Regents of Univ. of Okla.*, 693 F.3d 1303 (10th Cir. 2012), *cert. denied* 133 S. Ct. 1255 (2013) (dismissed state law claim brought in this Court <u>against the University by the same law firm currently representing Plaintiffs in this action</u>); *Weinberger v. State*, 2007 WL 593572, 8 (W.D. Okla.); *Osborne v. Okla. Empl. Sec. Comm'n*, 2006 WL 2090089, 4 (W.D. Okla.); *Rinehart v. Smart*, 2006 WL 1525939, 3 (W.D. Okla.); *and Weinberger v. State of Okla.*, 2007 WL 593572, 8 (W.D. Okla.) (holding that with respect to state law claims, "state colleges and universities, like Defendant, are entitled

---

[1] Had Congress unequivocally expressed an intent to abrogate states' immunity - which it did not, the Court would have to determine whether the abrogation was done within the constitutional powers conferred upon Congress to do so.  The Supreme Court has recognized Congress' authority under Section 5 of the Fourteenth Amendment; however, to the extent to the TVPRA was enacted pursuant to the Commerce Clause or Article I of the Thirteenth Amendment, it would not be a proper use of Congressional power against the states.  *See Seminole Tribe,* 517 U.S. at 66 (abrogation not valid through Commerce Clause powers); *Francisco v. Susano*, 525 Fed.Appx. 828, 834, 2013 WL 2302691 T *5, N. 8 (10th Cir. 2013) ("the TVPA was enacted under Congress' Commerce Clause powers"); *U.S. v. Nelson*, 277 F.3d 164, 181 n. 7 (2nd Cir. 2002) (discussing unsettled law of Congress' power to abrogate states' immunity through Section 2 of the Thirteenth Amendment).

to Eleventh Amendment immunity from suit in federal court absent waiver or a valid abrogation by Congress."). Because there is no abrogation or waiver of immunity, Plaintiffs' state-law claim for alleged unpaid wages is barred. Further, Plaintiff's claims are barred by the statute of limitations. *See* 12 Okla. Stat. § 95; *compare* Compl. ¶¶ 12, 17.

## II.   UNIVERSITY EMPLOYEES ARE NOT PROPER PARTIES.

Like all University employees, Dr. Hildebrand is entitled to the protections of qualified and sovereign immunity for his actions taken within the scope of his State employment. Plaintiffs do not endeavor to articulate anything contrary. With respect to the State law claims, the sovereign immunity of State employees as prescribed in the OGTCA is absolute. (Section I(B)(i)(c), above.) The sovereign immunity of State employees operates to shield the good faith decisions and reasonable acts of administrators and officials from liability. Plaintiff does not allege a single distinct fact in support of an official capacity claim. Rather, Plaintiff relies upon all of the same circumstances which allegedly offer the basis for claims against the University and a separate corporate defendant.

The University can carry out its business only through its authorized officials, like Dr. Hildebrand and others in the relevant college, department, and laboratory. *See* 70 Okla. Stat. § 3305(c), (d) ("The Board of Regents is authorized to enter into contracts and to authorize officials of the University to act on its behalf in carrying out the powers conferred upon it . . . ."). By virtue of Section 8, Article XIII of the Constitution, the Board of Regents has the power to do all things necessary to make effective the purposes for which its parts are maintained and operated. *See also* 70 Okla. Stat. §§ 3103, 3305; *Bd. of Regents v. Baker*, 638 P.2d 464, 467 (Okla. 1981); *Rheam v. Bd. of Regents*, 18 P.2d 535, 538 (Okla. 1933). It is imperative for the functioning of the University that its employees receive the protections due. A "government employee acting within the scope of employment is relieved from

private liability for tortious conduct." *Martin*, 975 P.2d at 895; *Bradford v. Univ. of Okla.*, No. CIV-05-0624-HE, 2006 WL 1698480 (W.D. Okla. June 20, 2006).

In the case-style, Plaintiffs specify that Dr. Hildebrand is sued as an "individual;" however, they pepper the Complaint with conclusory allegations that he was performing for or on behalf of the University and/or Pure Protein at all times. Any official capacity claim intended against Dr. Hildebrand is the equivalent of a claim against an arm of the State of Oklahoma and must be dismissed. Under the Eleventh Amendment, a state, its officials, and its employees may be sued in federal court only when the state has consented to suit. *Seminole Tribe*, 517 U.S. at 54. This doctrine applies to lawsuits where a party challenges the acts of state officials or employees in their official capacities and seeks money damages. The Eleventh Amendment bars such suits because a judgment would be satisfied from the state's treasury and, therefore, the state is the real party in interest.

Presuming Dr. Hildebrand is being sued in his official capacity, the Eleventh Amendment is squarely in play as a bar to suit. *See Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1196 (10th Cir. 1998); *Rozek v. Topolnicki*, 865 F.2d 1154, 1158 (10th Cir. 1989) (*quoting Quern v. Jordan*, 440 U.S. 332, 345 (1979)); *Pennhurst v. Halderman*, 465 U.S. 89, 119-120 (1984); *Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989); *accord Harris v. Champion*, 51 F.3d 901, 905-06 (10th Cir. 1995); *see also Bradford,* 2006 WL 1698480, at \*2. Suing officials in their official capacity represents only another way of pleading an action against the state entity. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978); *see also Pellegrino*, 63 P.3d 535, 537 (Okla. 2003).

Further, as a state employee, Dr. Hildebrand has the protection of qualified immunity. "Under the doctrine of qualified immunity, government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does

not violate established statutory or constitutional rights of which a reasonable person would have known." *Douglas v. Dobbs*, 419 F.3d 1097, 1100 (10th Cir. 2005) (citations omitted). The protections of qualified immunity extend to precluding the common pangs of litigation, including discovery. *See Rooks v. State*, 842 P.2d 773, 776 (Okla. Civ. App. 1992). Because qualified immunity is a question of law to be "resolved at the earliest stage of litigation," it is ripe for decision. *See Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987).

Plaintiff cannot sue Dr. Hildebrand in an "alternative" individual capacity in attempt to achieve indirectly that which is proscribed by state and federal immunities attendant to the University. Were the claims not barred for all the identified legal deficiencies, they are factually deficient and fail to plausibly support a claim upon which relief could be granted. The claims are an impermissible end-run around Eleventh Amendment jurisprudence.

### III. THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Even if Plaintiffs' claims were not barred by the University's immunity and the Court's lack of jurisdiction, the deficient nature of the pleading warrants dismissal under Fed.R.Civ.P. 12(b)(6). The Supreme Court's standard for 12(b)(6) dismissal is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In making a 12(b)(6) determination, the Court should "look for plausibility in th[e] complaint." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). The *specific allegations* in the complaint must be reviewed "to determine whether they plausibly support a legal claim for relief." *Id.* at 1215 n.2; *see also Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).

Entitlement to relief requires more than just "labels and conclusions or a formulaic recitation of the elements", *Robbins v. State of Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008),

and conclusory allegations that lack supporting factual averments, such as those in the Complaint, are insufficient to state a claim. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted). "[I]n analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not [their] conclusory allegations." *Id.*; *see also*, *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002) ("[A]ll well-pleaded facts, *as distinguished from conclusory allegations*, must be taken as true." (emphasis added)); *Bryan v. Stillwater Bd. of Realtors*, 578 F.2d 1319, 1321 (10th Cir. 1977) ("[A]llegations of conclusions or opinions are not sufficient when no facts are alleged by way of the statement of the claim."); *Oppenheim v. Sterling*, 368 F.2d 516, 519 (10th Cir. 1966) ("[U]nsupported conclusions . . . may be disregarded.").

Although the Complaint spans twelve (12) pages, the factual recitations are so scarce that the Court and all parties are left to wonder what happened, when did it happen, who or what engaged in any particular activity or omission that resulted in an injury or inconvenience. Further, the broad, collective allegations against all "defendants" is impermissibly vague. Plaintiffs' most specific statements as to the University's actual conduct, such as "Plaintiffs . . . were recruited and hired by . . . the University . . . through the Optional Training Visa program." (Compl. ¶¶ 1, 16), fall far short of factual averments or contentions sufficient to state a claim upon which relief can be granted. There are no factual allegations of alleged knowledge of or wrongdoing by the University. In fact, the Complaint fails to state that any work was done for the University. (Compl. ¶¶ 17, 18, 20, 21, 24, 27.)

Plaintiffs did not allege, nor could they honestly allege, they are non-exempt employees as required to subject any defendant to the state and federal overtime claims

attempted.[2]  For example, under the FLSA an exempt employee is entitled to receive only the full amount of the base salary; there is no limit to the amount of work required or expected from an exempt employee.  These limitations highlight the likely intentional omission of detail from the Complaint.  The lack of detail, however, will also stand to cause the action to be dismissed.  *See Pruell v. Caritas Christi*, 678 F.3d 10, 13 (1st Cir. 2012) (granting 12(b)(6) motion as to FLSA claim); *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 243 (3rd Cir. 2014) (same); *Landers v. Quality Comm., Inc.*, 771 F.3d 638, 645 (9th Cir. 2014) (same).

The Court should dismiss the unlawful human trafficking claim because Plaintiffs fail to implicate the University (or any defendant) in any "trafficking" violation.  There is no allegation anywhere in the Complaint that the University was part of, or participated in, human trafficking.  Plaintiffs cannot maintain a § 1590 claim based on their initial recruitment, as they fail to allege a single act of wrongdoing relating to recruitment, hiring, or H–1B immigration sponsorship.  Plaintiffs have failed to demonstrate or explain how the University recruited, harbored, provided or obtained their services – a necessary element of trafficking under the TVPRA.  Without any factual recitation for this element, Plaintiffs' trafficking claim(s) are nothing more than their forced labor claim restated.  Plaintiffs failed to state a distinct claim for trafficking, as opposed to forced labor, where there are no allegations regarding wrongful conduct prior to the alleged forced labor.

---

[2]Plaintiffs plead they were employed by the University through the H1B Visa program as research assistants "performing tissue culture and DNA sequencing" "and tissue typing for research and clinical studies."  Plaintiff Danijela "was hired to make [Class I and Class II] transfectants and tissue cultures." (Compl. ¶¶ 15, 16).  Salaried employees are exempt if their primary duty requires "knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction". 29 C.F.R. § 541.300; *see also* 8 C.F.R. § 214.2(h)(4)(C)(ii) (defining an H-1B "specialty occupation").

In addition to a lack of plausibility, Plaintiffs' forced labor claims fail because they are consumed within the FLSA claim and are pre-empted. *DeSilva v. North Shore-Long Island Jewish Health System, Inc.*, 2012 WL 748760, at *7 (E.D.N.Y. Mar. 7, 2012) citing *DeSilva*, 770 F.Supp.2d 497, 512-19 (E.D.N.Y. 2011). Further, warnings of legitimate but adverse consequences or credible threats of deportation, standing alone, are not sufficient to violate the forced labor statute. *See id*.; *Alvarado v. Universidad Carlos Albizu*, 2010 WL 3385345 at ** 3-4 (S.D. Fla. 2010 Aug. 25, 2010); 8 CFR §§ 214.2(h)(4)(iii)(E), (h)(11)(i)(A) (notice and other requirements of sponsoring institution upon termination of employing an H1B visa holder). Plaintiffs' limited factual recitations actually support the University's defenses. The University and its officials have an unequivocal obligation to monitor and be held accountable for the whereabouts of its employees who are in this country on an H1B Visa. Like their status as exempt salaried professionals precludes their overtime claims, it also negates any plausibility of the TVPRA claims. *U.S. v. Kozminski*, 487 U.S. 931, 948 (1988); *see U.S. v. Kaufman*, 546 F.3d 1242, 1265 (10th Cir. 2008).

As guidance to dismiss their state law claims, Judge Frizzell recently dismissed a near-identically plead OPLA claim against a State entity (in an action represented by lead counsel in this matter), stating:

> In summary, plaintiffs' First Amended Complaint fails to satisfy the pleading requirements of Twombly. First, and most fundamentally, although it cites OPLA, it fails to identify which provision or provisions of the act have been violated. It alleges no facts which, taken as true, establish that PSO failed to pay wages "agreed upon between the employer and the employee" or "provided by the employer to his employees in an established policy." See 40 Okla. Stat. § 165.1(4).

*Price v. Public Service Co. of Okla.*, No. 13–CV–514–GKF–PJC (March 24, 2014), 2014 WL 1217962 at *6 (N.D. Okla. 2014) (see Complaint, No. 13–CV–514–GKF–PJC (August 13, 2013), 2013 WL 7703647).[3]

Having nothing more than generalized and conclusory statements void of specifically alleged conduct, circumstance, behavior, or context to flesh out the claims, the Complaint fails to state a plausible claim to relief.

## IV.   LEAVE TO AMEND SHOULD NOT BE GRANTED.

Leave to amend is not automatic and may be denied if claims are untimely or futile. *Forman v. Davis*, 371 U.S. 178, 182 (1962); *Bauchman ex rel. Bauchman v. W. High Sch.*, 132 F.3d 542, 559 (10th Cir. 1997); *Price v. City of the Village*, No. CIV-08-1343-D, 2009 WL 3756654 (W.D. Okla., Nov. 6, 2009). Plaintiffs are unable to assert a viable claim against the University because the asserted claims are barred by operation of law, immunity, and limitations. Further, the claim for injunctive relief under the TVPRA is not a permissible remedy outside of a suit filed by the Secretary of Labor.

Plaintiffs' inability to cure the defects is clear. Leave to amend would be futile and should not be granted. *See, e.g., Alden v. Maine*, 527 U.S. 706, 712 (1999).

## CONCLUSION

This matter presents inextricably intertwined issues of sovereign immunity and subject matter jurisdiction, all of which subject the case to immediate dismissal. Plaintiffs cannot overcome the defenses raised. As Plaintiffs have not shown, nor could they show, a waiver

---

[3] The bereft nature of the claim makes it impossible to discern the intended recovery or basis for recovery under the OPLA. To the extent Plaintiffs seek compensation under state law for pay mandated by the FLSA, the state law alternative remedy may be preempted by the FLSA and subject to dismissal. *See, e.g., Roman v. Maietta Construction, Inc.*, 147 F.3d 71, 76 (1st Cir. 1998); *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194 (4th Cir. 2007); *Martinez-Hernandez v. Butterball, LLC*, 578 F.Supp.2d 816, 819 (E.D. N.C. 2008).

or valid abrogation of immunity for their claims, the Court is without jurisdiction irrespective of the nature of Plaintiffs' claims. Considering the nature of the defects presented by Plaintiffs' Complaint, no court would have subject matter over the claims. Therefore, the University requests this Court dismiss the claims to avoid further waste of resources. The University respectfully request the Court dismiss Plaintiffs' Complaint in its entirety and grant any and all additional relief the Court deems just and equitable, including but not limited to costs and fees.

                                                                                  Respectfully submitted,

                                                                                  s/Shawnae E. Robey
                                                                                 Shawnae E. Robey, OBA #19195
                                                                                 Gus H. Buthman, OBA # 22089
                                                                                 Eric A. Moen, OBA # 31155
                                                                                 Office of Legal Counsel
                                                                                 University of Oklahoma
                                                                                660 Parrington Oval, Suite 213
                                                                                Norman, Oklahoma 73019
                                                                                Telephone: (405) 325-4124
                                                                                Facsimile: (405) 325-7681
                                                                                srobey@ou.edu
                                                                                gbuthman@ou.edu
                                                                                emoen@ou.edu

*Attorneys for Defendant, The State of Oklahoma ex rel. Board of Regents of the University of Oklahoma*

## CERTIFICATE OF SERVICE

I hereby certify that on December 29, 2014, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

| | |
|---|---|
| George S. Freedman<br>Sarah Rowe Clutts<br>Lester, Loving & Davies, P.C.<br>1701 South Kelly Avenue<br>Edmond, OK 73013<br><br>*Attorneys for Plaintiffs* | Jason S. Boulette<br>Steven H. Garrett<br>Boulette & Golden LLP<br>2801 Via Fortuna, Suite 530<br>Austin, TX 78746<br><br>*Attorneys for Defendant, Pure Protein LLC* |

Joshua W. Solberg
Spencer F. Smith
McAfee & Taft
211 N. Robinson Ave., 10th Floor
Oklahoma City, OK 73102

*Attorneys for Defendant, Pure Protein LLC*

                                                  s/Shawnae E. Robey