## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1.  DANIJELA MOJSILOVIC | ) | |
| 2.  ALEKSANDAR MOJSILOVIC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. CIV-14-886-R |
| | ) | |
| 1.  STATE OF OKLAHOMA ex rel. THE | ) | |
| BOARD OF REGENTS FOR THE | ) | |
| UNIVERSITY OF OKLAHOMA; | ) | |
| 2.  PURE PROTEIN, LLC., a domestic | ) | |
| limited liability company, and | ) | |
| 3.  WILLIAM HILDEBRAND, an individual. | ) | |
| | ) | |
| Defendants. | ) | |

_____

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO THE UNIVERSITY
AND HILDEBRAND'S MOTIONS TO DISMISS**
_____

**RESPECTUFULLY SUBMITTED THIS 6TH DAY OF FEBRUARY, 2015.**

s/ George S. Freedman
_____
George S. Freedman, OBA No. 15764
Sarah Rowe Clutts, OBA No. 31208
LESTER, LOVING & DAVIES, P.C.
1701 South Kelly Avenue
Edmond, Oklahoma 73013-3623
(405) 844-9900 - Telephone
(405) 844-9958 – Fax
Email: gfreedman@lldlaw.com
          sclutts@lldlaw.com

The Mojsilovics requested leave to file this supplemental brief because the University and Hildebrand referenced new but irrelevant case law in their attempt to argue each may practice involuntary servitude with immunity and without regard to the explicit language of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §§ 1589, *et seq.*, as authorized by the Thirteenth Amendment.[1] As provided below and in addition to the responses previously provided to all three Defendants' motions [Response to University, Dkt. #26; Pure Protein, Dkt. #27; and Hildebrand, Dkt. #28], the motions to dismiss should be denied.[2]

**Proposition I**

**The Reconstruction Amendments to the Constitution, including the Thirteenth Amendment, "fundamentally" expanded federal power at the expense of state autonomy. In adopting the TVPRA, Congress' use of the word "whoever" is all that was needed to bar the states from engaging in human trafficking.**

Both the University and Hildebrand incorrectly argue that Congress must provide "a clear legislative statement" abrogating the states' sovereign immunity when enacting

---

[1] The parties and case law use the TVPA and the TVPRA interchangeably. To be clear, the TVPA was enacted in 2000 and the TVPRA, which reauthorized the TVPA, was enacted in 2003 and included the civil remedy contained in § 1595.

[2] The Mojsilovics did not request leave to address the University's statement in the reply that it sought dismissal based on statute of limitations and qualified immunity for Hildebrand. *See* Dkt. 31, pg. 2. Neither of these assertions was argued, other than in passing, in the University's motion to dismiss. Neither was supported by any citation to the Complaint or relevant case law. The University wholly failed to meet its burden to establish either defense. If the Court believes either of these were properly asserted in the University's brief and require a response, the Mojsilovics request further leave to respond. In any event, the TVPRA, the only cause of action asserted against the University, has a ten year limitation period and the Complaint provides the involuntary servitude began at the earliest in 2006. *See* 18 U.S.C. § 1595 and Compl. ¶¶ 12-13. Further, the University fails to identify any legal basis for asserting qualified immunity even applies to a TVPRA claim. *See* generally *Saucier v. Katz*, 553 U.S. 194, 201 (2001).

legislation pursuant to the Thirteenth Amendment. [University, Dkt. #31, pg.4 citing, *inter alia*, *Seminole Tribe of Fla. v. Florida*,  517 U.S. 44, 55 (1996); Hildebrand, Dkt. #29, pg. 4, without authority]. In so arguing, Defendants fail to recognize the fundamental differences the United States Supreme Court has articulated between Congress' limited authority under Article I and elsewhere, and Congress' broad authority under the Reconstruction Amendments specifically related to slavery.  In *Bd. of County Comm'rs v. United States EEOC*, 405 F.3d 840, 850 (10th Cir. 2005), the Tenth Circuit expressly addressed and rejected the University and Hildebrand's argument that the clear statement rule applies to Reconstruction Amendments. The Mojsilovics cited this case in their Response Briefs. Defendants have simply and wrongly ignored it.

    *Bd. of County Comm'rs*, addressed in more detail below, is based on deeply rooted Supreme Court authority. In *Alden v. Maine*, 527 U.S. 706 (1999), Justice Scalia trudged through the long and arduous history of sovereign immunity. (*See* Mojsilovic Response to University, Dkt. #26, Prop. II(A)). Crucial to this history, and completely ignored by the University and Hildebrand, is the principle that "where there has been 'a surrender of this immunity in the plan of the convention[,]" federal courts have subject matter jurisdiction and the states do not enjoy sovereign immunity. *Id.* at 729, quoting *Principality of Monaco v. Mississippi*, 292 U.S. 313, 322-23 (1934), quoting The Federalist, No. 81, at 487 (footnote omitted). "This separate and distinct structural principle is not directly related to scope of the judicial power established by Article III, but **inheres in the system of federalism established by the Constitution.**" *Alden*, 527 U.S. at 730 (emphasis added). As a result of this "structural principle," abrogation of sovereign immunity without states'

2

consent occurs when Congress enacts legislation "pursuant to the constitutional design." *Id.* at 730-31, citing *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779 (1991).

The Supreme Court has found the "constitutional design" principle is applicable to Constitutional Amendments, including and especially the Reconstruction Amendments. *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976) (considering sovereign immunity and the Fourteenth Amendment).[3] In *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409 (1968), a case also ignored by these Defendants, the Supreme Court reviewed sovereign immunity with respect to Congressional authority under the Thirteenth Amendment in enacting 42 U.S.C. § 1982, providing that "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." The "negro" plaintiffs sued under the statute because a private party refused to sell them property because of their race. *Jones*, 392 U.S. at 412. Rejecting the defendant's argument that the statute only applied to "state action," the Supreme Court held "that § 1982 bars *all* racial discrimination, private **as well as public**, in the sale or rental of property, and that the statute, thus construed, **is a valid exercise of the power of Congress to enforce the Thirteenth Amendment.**" *Id.* at 413 (Italics emphasis original, bold emphasis added).

All parties in *Jones*, including and especially the lone dissenting Justice, agreed § 2 of the Thirteenth Amendment provided Congress the authority to enact legislation to direct state action. The majority wrote: "It has never been doubted, therefore, 'that the power

---

[3]The Mojsilovics provided an in depth discussion of *Fitzpatrick* in its Response Brief [Dkt. # 26], beginning on page 14.

vested in Congress to enforce the article by appropriate legislation,' includes the power to enact laws 'direct and primary, operating upon the acts of individuals, whether sanctioned by State legislation or not.'" *Jones*, 392 U.S. at 438 quoting *Civil Rights Cases*, 109 U.S. 3, 20 (1883). Arguing only with the majority on whether Congressional authority included purely private conduct, Justice Harlan confirmed his view § 2 authorized Congress to curtail state action: "It seems to me that this original wording indicates even more strongly than the present language that § 1 of the Act … was intended to apply only to action taken pursuant to state or community authority….'" *Jones,* 392 U.S. at 454 (citation omitted).

*Jones* is simply in line with the vast history outlined in *Alden v. Maine* that § 2 of the Thirteenth Amendment was designed to transfer authority from the states to the federal government to address all vestiges of slavery and involuntary servitude.[4] Significantly, the statute at issue in *Jones*, § 1982, uses language that is narrower than the language of the

---

[4] The majority opinion in *Jones* further delves into the legislative history of both the Thirteenth Amendment and § 1982. *See* Section IV of the Opinion, 392 U.S. at 422, *et seq*. Specifically with respect to the Thirteenth Amendment, Senator Trumbull, the Senate floor leader for the amendment, was quoted by the Supreme Court: "I reported from the Judiciary Committee the second section of the [*Thirteenth Amendment*] for the very purpose of conferring upon Congress authority to see that the first section was carried out in good faith … and I hold that second section Congress will have the authority … *not only to pass the bill of the Senator from Massachusetts* [§ 1982], *but a bill that will be much more efficient to protect the freedman in his rights.*" *Id.* at 429-30 (emphasis original). Senator Trumbull further declared with respect to § 1982 as it relates to the Thirteenth Amendment: "There is very little importance in the general declaration of abstract truths and principles unless they can be carried into effect, unless the persons who are to be affected by them have some means of availing themselves of their benefits." *Id.* at 431-32. In debating passage of § 1982, Representative Thayer of Pennsylvania stated, "[w]hen I voted for the amendment to abolish slavery … I did not suppose that I was offering … a mere paper guarantee. And when I voted for the second section of the *amendment*, I felt … certain that I had … given to Congress ability to protect … the rights which the first section gave…" *Id.* at 433-34.

TVPRA – compare "all citizens" in § 1982 to "whoever" in the TVPRA – yet there was no question it covers the states. To the contrary, the Supreme Court unanimously accepted in *Jones* as a given the language of § 1982 necessarily applied to "state action." The history and language of the Thirteenth Amendment and Congressional enactments based on the Amendment, such as the TVPRA, make clear state action is covered.

Defendants can no more claim immunity from a claim of the modern form of slavery – human trafficking – than they could from a claim they refused to sell University property to an individual because the person is an African American. That is the law under § 1982, even though there is no "clear statement" that § 1982 abrogates sovereign immunity. And it is the law under the TVPRA. Just as the narrower language of § 1982 explicitly prohibits anybody, including the state, from refusing to sell property to an individual based on race, the exceptionally broad language of the TVPRA prohibits anybody, including the state, from engaging in human trafficking.

The Tenth Circuit applied this same analysis in *Bd. of County Comm'rs v. United States EEOC*, *supra*, another case ignored by the University and Hildebrand. The Freemont Board of County Commissioners argued to the Tenth Circuit that enforcing the Government Employee Rights Act ("GERA"), 42 U.S.C. §§2000e-16(a), (b) and (c), in employment retaliation claims would violate state sovereignty. *Bd. of County Comm'rs v. United States EEOC*, 405 F.3d at 847. "[T]he Board contends that the EEOC's interpretation of the statute in the face of congressional ambiguity contravenes the Tenth

Amendment[5] because Congress must make a plain statement of intent when its legislation affects a state's control over its officers and agents under Article I. *See Gregory v. Ashcroft,* 501 U.S. 452, 460-461[] (1991)." *Id.* But, as the Tenth Circuit found, "[i]n *Gregory,* the Supreme Court reiterated that 'the principles of federalism that constrain Congress' exercise of its Commerce Clause powers are attenuated when Congress acts pursuant to its powers to enforce the Civil War Amendments.'" *Id.* quoting *Gregory*, 501 U.S. at 468. In finding that GERA was enacted within Congress' "powers to enforce the Civil War Amendments," in that case the Fourteenth Amendment, the Tenth Circuit found:

> the plain statement rule does not apply in interpreting § 2000e-16b(a)(1) because the Fourteenth and Fifteenth Amendments **have already altered the constitutional balance of federal and state powers.** Plain statements are required to clarify Congress's intent to alter the balance when legislating under the Commerce Clause, a showing not necessary when it is acting under the Fourteenth and Fifteenth Amendments. The Court has recognized this distinction between legislation enacted under Congress's power to enforce the Civil War Amendments from legislation enacted under other sources of authority. *Gregory,* 501 U.S. at 468 [] *see also Fitzpatrick* 427 U.S. at 456.

*Bd. of County Comm'rs*, 405 F.3d at 847 (emphasis added). Citing *Fitzpatrick*, the Tenth Circuit stated: "When Congress acts pursuant to § 5 [of the Fourteenth Amendment], not only is it exercising legislative authority that is **plenary within the terms of the constitutional grant**, it is exercising that authority under one section of a constitutional Amendment whose other sections **by their own terms embody limitations on state authority**. We think that Congress may, in determining what is 'appropriate legislation'

---

[5] The Tenth Circuit confirmed the Tenth Amendment argument is akin to alleging sovereign immunity. *Id.* citing *New York v. United States,* 505 U.S. 144, 156-157 (1992); and *Kansas v. United States,* 214 F.3d 1196, 1198 (10th Cir. 2000).

for the purpose of enforcing the provisions of the Fourteenth Amendment, **provide for private suits against States or state officials** which are constitutionally impermissible in other contexts." *Id.* at 850 n. 15 (emphasis added).[6]

As *Fitzpatrick*, *Jones* and *Bd. of County Comm'rs* make abundantly clear, Congress need not make a clearer or plainer statement of its intent to apply a statute to the states or state officers when acting under its Thirteenth Amendment authority than it did in the TVPRA. States are not allowed to engage in slavery or human trafficking. They too are subject to the TVPRA.

## Proposition II

## Congress used its Thirteenth Amendment authority to enact the TVPRA

The University's attempt to claim sovereign immunity allowing it to engage in human trafficking takes an odd turn when it asserts the TVPRA was actually enacted under the Commerce Clause. [Dkt. #31, pg. 3]. To get there, the University cites two cases addressing whether violations of the TVPRA can include punitive and compensatory damages. *Francisco v. Susano*, 525 Fed.Appx. 828, 834 (10th Cir. 2013) and *Ditullio v. Boehm*, 662 F.3d 1091, 1098 (9th Cir. 2011), as well as a House Judiciary Report that was preliminary to the passage of the entire bill reauthorizing the TVPA in 2003. H.R. REP. 108-264. These cited authorities are meant to distract the Court from the clear statement of

---

[6] As stated in the Mojsilovics' response brief, the Thirteenth Amendment, by identifying incarceration as an exception to indentured servitude, clearly was directed at the states and state officials.

intent cited by Congress when it originally passed the TVPA in 2000. *See* Response Brief to University [Dkt. #26, pgs. 20-21].[7]

The University's two cases do not even address Congress' statement in 2000 when if first passed the legislation. In *Francisco*, the language cited by the University is found in *dicta* used by the Tenth Circuit only to reinforce its position that punitive and compensatory damages are appropriate in a TVPA claim because it is a tort remedy. *Francisco*, 525 Fed.Appx. at 834 n. 8.[8] For this position, *Francisco* cites the only other case cited by the University, *Ditullio*. Similarly, in *Ditullio*, the Ninth Circuit was only concerned with whether the TVPA included punitive and compensatory damages. As happened in *Francisco*, the *Ditullio* court dropped a footnote to explain the TVPA was not a Spending Clause powers case, citing only the House Judiciary Report identified above from 2003. *Ditullio,* 662 F.3d at 1098, n. 4.

These cases are meaningless here. Neither they nor the House Judiciary Report addressed Congress' statement of intent in Public Law 106-386 §§ 102(b)(12), (21) and (22), that it was acting under its Thirteenth Amendment authority when it passed the TVPA. A statement from the House Judiciary Committee that Congress had authority under the Commerce Clause to allow punitive and compensatory damages as a *remedy* for

---

[7] "The right to be free from slavery and involuntary servitude is among those unalienable rights. Acknowledging this fact, the United States outlawed slavery and involuntary servitude in 1865, recognizing them as civil institutions that must be abolished." Public Law 106-386, § 102(b)(22).

[8] If it was a Spending Clause powers case, Congress would need to expressly provide for compensatory and punitive damages. *See Barnes v. Gorman*, 536 U.S. 181, 186-90 (2002).

human trafficking does not override the entire Congress' clear statement it enacted the anti-human trafficking legislation pursuant to its Thirteenth Amendment plenary authority.

## Proposition III

### No Court has found the TVPRA does not abrogate sovereign immunity.

In section II of his brief [Dkt. #29, pg. 4], Hildebrand argues "Plaintiffs' TVPRA claims are barred by sovereign immunity" citing two cases that have nothing to do with the TVPRA or any other statute. In *Cato v. United States*, 70 F.3d 1103 (9th Cir. 1995), the plaintiffs sued "directly under the Thirteenth Amendment" for "damages due to the enslavement of African Americans and subsequent discrimination against them[.]" *Id.* at 1110. There was no statute at issue to be analyzed under § 2 of the Thirteenth Amendment. Similarly, the D.C. Circuit refused to extend the Thirteenth Amendment itself to private causes of action involving freed slaves of the Cherokee Nation. *Vann v. Kempthorne*, 534 F.3d 741 (D.C. Cir. 2008). Here again, no statute was at issue. In fact, in language quoted by Hildebrand, the D.C. Circuit acknowledged that § 2 of the Thirteenth Amendment permits Congress to enact legislation providing for such private rights of action. *Id.* at 748-49.[9]

Because neither of these cases actually involve the TVPRA or any Congressional action at all, they do not apply here. Congress acted under its plenary Thirteenth

---

[9] To the extent Hildebrand argues *Vann v. Kempthorne* stands for the proposition that Congress must state its intent to abrogate sovereign immunity by "express and unequivocal language" in Reconstruction Amendment cases, such a holding is expressly rejected in the Tenth Circuit by *Bd. of County Comm'rs v. United States EEOC*. *See* Prop. I, *supra*.

Amendment authority when it enacted the TVPRA. Sovereign immunity does not protect University or Hildebrand.

## Proposition IV

### Assuming the University and Hildebrand do not waive immunity for the OPLA claim, this Court should dismiss that claim <u>without</u> prejudice.

Finally, in footnote 8, the University asserts *ipse dixit* the Mojsilovics' state law claims "are legally defective and should be dismissed by this Court with prejudice[.]" [Dkt. #31, pg. 10, n. 8]. The University offers no argument or authority for its assertion the OPLA claims are "legally defective." The only argument the University offered in its original motion to dismiss was that the state law claims were barred by sovereign immunity in federal court. The Mojsilovics have conceded they cannot sue the state for state law claims in federal court without the state's consent. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119 (1983) The Mojsilovics intend to bring a state court case against the University and Hildebrand, in his official capacity, if either refuses to consent to the suit in this federal forum. Given that there will not have been any adjudication on the merits of the Mojsilovics' state law claims, it would be inappropriate to dismiss those claims with prejudice at this stage.

s/ George S. Freedman
George S. Freedman, OBA No. 15764
Sarah Rowe Clutts, OBA No. 31208
LESTER, LOVING & DAVIES, P.C.
1701 South Kelly Avenue
Edmond, Oklahoma 73013-3623
(405) 844-9900 - Telephone
(405) 844-9958 – Fax
Email: gfreedman@lldlaw.com

10

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2015, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Spencer F. Smith, OBA No. 20430
Joshua W. Solberg, OBA No. 22308
McAfee & Taft
A Professional Corporation
Tenth Floor, Two Leadership Square
211 N. Robinson Avenue
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-9621
Facsimile: (405) 235-0439
Email: spencer.smith@mcafeetaft.com
        Joshua.solberg@mcafeetaft.com
*Counsel for Pure Protein*

Jason S. Boulette (*PHV*)
Steven H. Garrett (*PHV*)
Boulette & Golden L.L.P
2801 Via Fortuna, Suite 530
Austin, Texas 78746
Telephone: (512) 732-8901
Facsimile: (512) 732-8905
Email: jason@boulettegolden.com
        steven@boulettegolden.com
*Counsel for Pure Protein*

Stephen R. Johnson, OBA No. 4724
Heidi J. Long, OBA No. 17667
James E. Warner III, OBA No. 19593
Holladay & Chilton, PLLC
204 N. Robinson Ave, Ste 1550
Oklahoma City, Oklahoma 73102
Telephone: (405) 236-2343
Facsimile: (405) 239-2349
*Counsel for Defendant Hildebrand*

Shawnae E. Robey, OBA No. 19195
Gus H. Buthman, OBA No. 22089
Eric A. Moen, OBA No. 31155
Office of Legal Counsel
University of Oklahoma
660 Parrington Oval, Ste 213
Norman, Oklahoma 73019
Telephone: (405) 325-4124
Email: srobey@ou.edu
        gbuthman@ou.edu
        emoen@ou.edu
*Counsel for University of Oklahoma*

S/ George S. Freedman