# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DANIJELA MOJSILOVIC and ALEKSANDAR MOJSILOVIC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIV-14-886-R |
| STATE OF OKLAHOMA ex rel. THE BOARD OF REGENTS FOR THE UNIVERSITY OF OKLAHOMA, *et al.*, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

This matter comes before the Court on the Motion to Dismiss, filed by Defendant Pure Protein, LLC, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 17). Plaintiffs responded in opposition to the motion. Having considered the parties' submissions, the Court finds as follows.

Plaintiffs filed a Complaint asserting they are Serbian nationals hired by the University to serve as research assistants at the Health Sciences Center. Complaint ¶ 1. Plaintiffs further allege Defendant Hildebrand is an employee of the University and the owner, operator and CEO of Defendant Pure Protein, LLC. Complaint ¶ 4. Plaintiff Danijela Mojsilovic contends she began working for the University in January 2007 through the Optional Practical Training Visa program, and was retained under the H1B Visa program in May 2007, which she continued until June, 2014. Plaintiff Aleksander Mojsilovic alleges he started work in the same optional program in October, 2006 and was retained in the H1B

Visa program in August 2007, which continued until June, 2014. Complaint ¶ 12-13. Both Plaintiffs allege they were retained to work in a medical research lab under the direction of Defendant Hildebrand. Complaint ¶ 16. Plaintiffs allege that shortly after beginning work for the University, Defendant Hildebrand demanded that in addition to their work on behalf of the University, both Plaintiffs perform work for Defendant Pure Protein. Complaint ¶ 17. Plaintiffs allege that although Defendant Hildebrand assured Plaintiffs they would be compensated for the work performed on behalf of his private company, which leased laboratory space from the University, they never received such payments. Complaint, ¶¶ 15, 18. Plaintiffs contend that Defendant Hildebrand required that their work on behalf of Pure Protein be in addition to the number of hours provided for by their contracts with the University, and therefore, "[b]ecause Defendant Hildebrand required Plaintiffs to work for both Defendant University and Defendant Pure Protein, Plaintiffs worked far in excess of forty (40) hours per week." Complaint ¶ 21. They allege Defendant Hildebrand, as their supervisor at the University, had the ability to exercise nearly total control over their employment terms and conditions, that he was authorized to hire, fire or modify the conditions of employment, and that he used his supervisory authority to force Plaintiffs to work on behalf of his personal company or to face deportation upon threat of termination. Complaint ¶¶ 26-27. Plaintiffs allege Defendant Hildebrand became verbally abusive and threatened deportation or revocation of their work visas when they inquired why they had not been paid for all of the hours worked. Complaint ¶ 29-30. Plaintiffs allege violation of: (1) the Fair Labor Standards Act, because they were not paid overtime (Count I); (2) the

Trafficking Victim Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1589 (forced labor) (Count II); (3) the TVPRA, 18 U.S.C. § 1590 (trafficking into servitude) (Count III); and (4) the Oklahoma Protection of Labor Act, Okla. Stat. tit. 40 § 165.1 *et seq.*("OPLA"), for failing to timely pay Plaintiff wages because they were not paid for all work performed.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court assumes "the factual allegations are true and ask[s] whether it is plausible that the plaintiff is entitled to relief." *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir.2009).

In asserting that dismissal is appropriate, Defendant Pure Protein argues that Plaintiffs have failed to allege wrongful conduct on its part; that Plaintiffs failed to allege an FLSA claim against them, that Plaintiffs failed to plead a TVPRA claim, and that the Plaintiffs failed to adequately plead their state law claim under Oklahoma law, in part because Plaintiffs did not allege they were non-exempt employees.

> The FLSA defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). An entity "employs" an individual under the FLSA if it "suffer[s] or permit[s]" that individual to work. 29 U.S.C. § 203(g). This definition is necessarily a broad one, in accordance with the remedial purpose of the FLSA. *See United States v. Rosenwasser*, 323 U.S. 360, 363 & n. 3, 65 S.Ct. 295, 89 L.Ed. 301 (1945); *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058 (2d Cir.1988).

*Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61 (2d Cir. 2003). An entity "suffers or permits" an individual to work if, as a matter of "economic reality," the entity functions as the individual's employer. *See Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33, 81 S.Ct.

3

933, 6 L.Ed.2d 100 (1961) (explaining that "'economic reality' rather than 'technical concepts' is ... the test of employment" under the statute). In addition, Plaintiffs contend that Pure Protein and the University were their joint employers for FLSA purposes, pursuant to 29 C.F.R. § 791.2(a), which provides, in pertinent part:

> A single individual may stand in the relation of an employee to two or more employers at the same time under the Fair Labor Standards Act of 1938, since there is nothing in the act which prevents an individual employed by one employer from also entering into an employment relationship with a different employer. A determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act depends upon all the facts in the particular case. If all the relevant facts establish that two or more employers are acting entirely independently of each other and are completely disassociated with respect to the employment of a particular employee, who during the same workweek performs work for more than one employer, each employer may disregard all work performed by the employee for the other employer (or employers) in determining his own responsibilities under the Act. On the other hand, if the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the Act. In this event, all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act, including the overtime provisions, with respect to the entire employment for the particular workweek. In discharging the joint obligation each employer may, of course, take credit toward minimum wage and overtime requirements for all payments made to the employee by the other joint employer or employers.

(footnotes omitted). The Court concludes that given Plaintiffs' allegations regarding Defendant Hildebrand and his unique position relative to the University and Defendant Pure Protein, that Plaintiffs' allegations are sufficient to avoid dismissal of their FLSA claims.

Plaintiffs allege that Defendant Hildebrand, as their supervisor with regard to the their

4

job at the University exceeded his authority by demanding labor for free on behalf of a private entity in which he has an ownership interest, and that this work was done at the University on equipment and in a lab leased by Pure Protein from the University. These allegations are sufficient at the motion to dismiss stage to support Plaintiffs' claim that the University and Pure Protein are not entirely independent, as they are tied together by Defendant Hildebrand. Furthermore, Pure Protein can act only through its agents, to include Defendant Hildebrand, and his actions, if taken on its behalf, could result in liability under the FLSA for Defendant Pure Protein. The Court finds the allegations in the Complaint sufficient to avoid dismissal of the FLSA claim on this basis.

The Court further finds that Plaintiffs have sufficiently alleged they did not receive wages entitled to them, specifically they allege that their work on behalf of Pure Protein was completed after they completed their contractual forty-hour work week for the University, and that their hours were largely unpaid on behalf of Pure Protein. The Court disagrees with Defendant's contention that Plaintiffs are required to quantify the number of hours for which they were not paid at this stage. *See Solis v. El Tequila*, LLC, 2013 WL 3771413 (N.D.Okla. 2013)(the claims at issue, including overtime, "are straightforward and capable of being described without reference to a large body of facts."); *In re Bank of America Wage and Hour Employment*, 2010 WL 4180567 (D.Kan. 2010)(collecting cases and concluding that dismissal not warranted where allegations are that employee worked more than 40 hours per week and not paid time-and-one half for those hours).

Defendant Pure Protein next contends Plaintiffs' FLSA claims should be dismissed

5

because Plaintiffs have failed to plead non-exempt status, and that their H-1B visa status necessarily precludes a finding that they were non-exempt. Defendant's argument ignores the burden of proof in an FLSA case, which requires that once an employee established a violation of the Act, the employer establish application of an exemption to avoid liability. *Clements v. Serco, Inc.*, 530 F.3d 1224, 1227 (10th Cir.2008).[1] As such the failure to plead non-exempt status provides no basis for relief to Pure Protein.

Defendant Pure Protein next seeks dismissal of Plaintiffs' claims under the TVPRA, first asserting that the FLSA preempts any TVPRA claim for promised but unpaid wages. The Tenth Circuit in *Francisco v. Susano*, 525 Fed.Appx. 828 (10th Cir. 2013), considered the availability of damages under the TVPA, the precursor to the TVPRA, in the presence of FLSA claims. The court concluded that non-economic compensatory and punitive damages were available under the TVPA, in addition to damages provided for FLSA recovery. *Id.* at 835. As such, the Court concludes that in this Circuit, the FLSA claims do not preempt attempts to recover under the TVPRA, because the potential damages are not co-extensive.

Defendant Pure Protein also argues that Plaintiffs have failed to sufficiently allege their claim for forced labor, because threats of deportation or withholding pay do not state a claim under the statute. As the Court interprets Plaintiffs' claims, they allege that Defendant

---

[1] The Court declines to consider Defendant's arguments regarding their visa status and what allegations they might have made with regard to their employment that negated their allegations regarding immigration. The straightforward interpretation of Plaintiffs' claims is that Defendant Hildebrand, an agent of both the University and Pure Protein, abused his power at the University to benefit Pure Protein by demanding that Plaintiffs work in excess of their contracted hours on behalf of Pure Protein.

6

Hildebrand, who had the authority to terminate Plaintiffs from their contracts with the University, which would have implicated their visa status, threatened termination if they did not perform work for the entity that he owned, at least in part, Pure Protein. Despite Defendant Pure Protein's arguments, the Court finds that the alleged threat was sufficient to state a claim against Pure Protein because Hildebrand is alleged to be its agent.

> The threat of deportation "can constitute serious harm to an immigrant within the meaning of the forced labor statute." *United States v. Rivera*, No. 09–CR–619 (SJF), 2012 WL 2339318, at *5 (E.D.N.Y. June 19, 2012). It also "'clearly falls within the concept and definition of "abuse of legal process"'" when "'the alleged objective for such conduct was to intimidate and coerce [Plaintiff] into forced labor.'" *Antonatos v. Waraich*, No. 1:12–cv–1905–JMC, 2013 WL 4523792, at *5 (D.S.C. Aug. 27, 2013) (quoting *Nunag–Tanedo v. E. Baton Rouge Parish Sch. Bd.*, 790 F.Supp.2d 1134, 1146 (C.D.Cal.2011) (internal citations omitted)). Indeed, "[t]he threat of deportation alone may support a claim for forced labor." *Aguirre v. Best Care Agency, Inc.*, 961 F.Supp.2d 427, 444, 2013 WL 4446925, at *12 (E.D.N.Y. Aug. 16, 2013); *see Calimlim*, 538 F.3d at 713; *United States v. Alstatt*, 858 F.Supp.2d 1032, 1041 (D.Neb.2012) ("A threat of deportation which causes involuntary servitude may be sufficient."). The United States Supreme Court has noted that "threatening ... an immigrant with deportation could constitute the threat of legal coercion that induces involuntary servitude, even though such threat made to an adult citizen of normal intelligence would be too implausible to produce involuntary servitude." *United States v. Kozminski*, 487 U.S. 931, 948, 108 S.Ct. 2751, 101 L.Ed.2d 788 (1988).

*Elat v. Ngoubene*, 993 F.Supp.2d 497 (D.Md. 2014). As noted by the court in *Camayo v. John Peroulis & Sons Sheep, Inc.*, 2012 WL 4359086, at *5 n. 6 (D.Colo. Sept. 24, 2012), "the question of whether statement and actions by an employer [constitute an abuse of the legal process] must be viewed in light of all the surrounding circumstances, and thus resolution of whether a certain statement amounts to an abuse of the legal process is one that is particularly difficult on the sparse record of a motion to dismiss." Furthermore, for

purposes of a TVPRA claim, "'[s]erious harm' includes threats of any consequences, whether physical or non-physical, that are sufficient under all of the surrounding circumstances to compel or coerce a reasonable person in the same situation to provide or to continue providing labor or services." *Aguirre v. Best Care Agency, Inc.*, 961 F.Supp.2d 427, 443 (E.D.N.Y.2013) (citation omitted). "'Abuse of the law or legal process' is the use of threats of legal action, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed in order to coerce someone into working against that person's will." *Id.* at 444 (citation omitted). Therefore, although an employer may legitimately advise an employee that termination may result in a change in visa status, utilizing that fact to force labor is not permitted by the law.

Defendant's contention that the Complaint fails to plead the requisite knowledge is without merit, as the Court infers from Plaintiffs' allegations that Defendant Hildebrand was acting as agent of Pure Protein when he demanded Plaintiffs work for free for Pure Protein or suffer the loss of their employment by the University, which he had the potential to facilitate. Furthermore, while it was indeed true that Plaintiffs would lose their immigration status if their employment with the University was terminated, the facts allege that Hildebrand on behalf of Pure Protein used this information to coerce Plaintiffs to perform uncompensated work for his personal interests. Defendant's motion to dismiss is denied with regard to this claim.

The Court finds with regard to Plaintiff's claim under 18 U.S.C. § 1590 that Plaintiffs have failed to allege sufficient facts to state a cause of action. Section 1590 provides that

anyone who "knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of" the statutes prohibiting slavery, forced labor or involuntary servitude, is guilty of trafficking. 18 U.S.C. § 1590(a). Plaintiffs provide no allegations to support a claim against Defendant Pure Protein, the complaint is devoid of any allegation that the company recruited, harbored, transported or obtained Plaintiffs, as required by § 1590. *See Shuvalova v. Cunningham*, 2010 WL 5387770, *4 (N.D.Cal. Dec. 22, 2010); *Martinez v. Calimlim*, 651 F.Supp.2d 852 (E.D.Wis. 2009)(listing elements of a § 1590 claim to include "knowingly recruited, harbored, transported, provided or obtained a person for labor."). As noted by Defendants, the Plaintiffs allege they were recruited by the University. They make no allegations regarding Defendant Pure Protein with regard to their initial decision to accept the offer of employment at the University and travel to Oklahoma. Plaintiff's 18 U.S.C. § 1590 claims against Pure Protein are hereby dismissed.

Finally, Defendant Pure Protein contends that Plaintiffs have failed to plead a claim under the Oklahoma Labor Protection Act, for the same reasons their FLSA claims fail. The Court, however, has concluded that Plaintiffs have stated an FLSA claim against Defendant Pure Protein, and therefore, Defendant Pure Protein's motion to dismiss is denied with regard to Plaintiffs' state law wage claim.

For the reasons set forth herein, Defendant Pure Protein's motion to dismiss is granted in part and denied in part.

IT IS SO ORDERED this 3rd day of March, 2015.

_David L. Russell_
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE